OPINION
This matter presents a timely appeal from a judgment rendered by the Belmont County Court, Western Division, finding defendant-appellant, Paul Hackman, guilty of domestic violence in violation of R.C. 2919.25 (A), along with his subsequent sentencing thereon.
Appellant was arrested, along with his wife, Eva Hackman (Eva), and his wife's brother, Pauly Shore (Shore), following a domestic incident which occurred on November 22, 1997 and which involved Gladys Emory (Emory), the sister of Eva and Shore. At trial, which commenced on March 3, 1998, there was a great deal of dispute as to what transpired during the November 22, 1997 incident. Emory testified that on the date in question, she went to the East Richland Market with her friends, James Foster (Foster) and Brad Wineman (Wineman) to purchase cigarettes. (Tr. 47). She claimed that appellant pulled his truck into the parking lot in such a way that blocked her car. (Tr. 47). Eva exited appellant's truck and started screaming at Emory. (Tr. 47). Eva then pulled Emory out of the car doorway and reached into Emory's car to hit Foster. (Tr. 48). Immediately after Eva's contact with Foster, Emory told Wineman to call police. (Tr. 48). This incited Eva to run around the car and punch Wineman in the back of the head. (Tr. 48). Wineman and Foster then entered the market to call the police.
Eva thereafter returned her attention to Emory and proceeded to kick her, grab her hair, and hit her. (Tr. 48). Emory stated that when she grabbed Eva's hair in return, Shore exited appellant's truck. Shore grabbed Emory by the throat and attempted to force her to the ground. (Tr. 49). Since Emory was entangled with Eva, both women fell to the ground causing Emory to land on her hand. (Tr. 49). At this time, appellant exited his truck and started kicking and hitting Emory while she was on the ground with Eva on top of her. (Tr. 49). Emory testified that because all three defendants were now beating her, she screamed to Wineman for help. (Tr. 49). Appellant then lifted Eva, but also brought Emory off the ground because Emory had clutched onto Eva. (Tr. 49). Thereafter, appellant, Eva, and Shore began bashing Emory's head into her car. (Tr. 49).
After leaving the market, appellant drove to the St. Clairsville Police Department with Eva and Shore to file a complaint against Emory. Meanwhile, Deputy Zuzack from the Belmont County Sheriff's Department had arrived at the scene of the incident. Emory gave a very quick summary of her version of the events to Deputy Zuzack. (Tr. 40). She then went to the hospital to receive treatment for dizziness, bumps on her head, and the injury to her hand. (Tr. 41, 43). Wineman and Foster followed Deputy Zuzack to the Belmont County Sheriff's Department to make their statements. At trial, Wineman and Foster corroborated Emory's story, stating that they saw all three defendants attacking Emory. (Tr. 14-15, 27-29). After Emory landed on the ground, they had a more difficult time observing the altercation from the market window. However, Wineman stated that he could tell from the body movements that appellant and Shore were kicking Emory. Furthermore, after the altercation, Wineman and Foster noticed blood on Emory's hand. (Tr. 16, 28). Deputy Zuzack testified that Emory looked like she had been beaten up and had a small cut on her right hand. (Tr. 43, 45). Deputy Zuzack also testified that in his opinion, the three co-defendant's were the aggressors in the fight. (Tr. 42).
Appellant's witnesses testified to a series of events that was nearly an antithesis of those given by the witnesses for plaintiff-appellee, State of Ohio. Both witnesses for appellant, along with appellant himself, testified that they arrived at the scene of the incident prior to the alleged victim. (Tr. 61, 72, 86). Further, Eva, who had already pled guilty to domestic violence against Emory, testified that Emory approached appellant's truck and pulled Eva out of the front seat by her jacket and hair. (Tr. 62). Eva claimed that she fought back, and eventually Shore got out of the truck to break up the fight. (Tr. 64). Eva declared that her husband, appellant, never got out of the truck. Appellant and Shore corroborated Eva's version of the events. (Tr. 73-74, 83-84). Finally, appellant's witnesses testified that either Wineman or Foster cracked appellant's windshield with a metal object pulled from Emory's car. (Tr. 67, 78, 88)
On March 12, 1998, the trial court found appellant guilty of domestic violence, stating, "The Court has weighed the credibility of the witnesses and finds the credibility of the State's witnesses to outweigh the testimony of the defendant and witnesses to the exclusion of reasonable doubt as to the defendant's guilt." On March 24, 1998, the trial court sentenced appellant to one hundred eighty days in jail, suspending all but fifteen days. Appellant was also placed on two years of probation. This timely appeal followed.
Appellant sets forth two assignments of error on appeal.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT, PAUL HACKMAN, GUILTY OF DOMESTIC VIOLENCE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Weight of the evidence deals with the effect of the trial evidence in inducing belief. State v. Thompkins (1997),78 Ohio St.3d 380, 387. A reviewing court shall not reverse a verdict as being against the manifest weight of the evidence unless it determines that the fact-finder clearly lost its way in resolving conflicts in the evidence. Thompkins, supra (citing State v.Martin (1983), 20 Ohio App.3d 172, 175). Further, appellate inquiry must review the evidence in a light most favorable to the prosecution and determine whether any reasonable trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1979), 61 Ohio St.3d 259,273 (citing Jackson v. Virginia (1979), 443 U.S. 307)
Appellant argues that the appellee's witnesses related unbelievable and inconsistent stories but that he, Eva, and Shore gave consistent accounts. However, credibility of the witnesses is primarily within the province of the fact-finder. State v.DeHass (1967), 10 Ohio St.2d 230, 231. The trial judge was in the best position to observe the demeanor, gestures, and voice inflections of the witnesses. DeHass, supra. These indicators of believability can lead a prudent trier-of-fact to the conclusion that certain witnesses possess an air of credibility that the other witnesses may lack.
After reviewing the entire record, it is apparent that the trial court did not clearly lose its way and create a manifest miscarriage of justice when he found that appellee's witnesses were more credible than those presented by appellant. We find that there was sufficient evidence in the record from which a reasonable trier-of-fact could have found the essential elements of the crime in question in this case proven beyond a reasonable doubt.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION TO DISMISS BASED ON LACK OF JURISDICTION AND VENUE."
After appellee rested its case, appellant's defense counsel stated, "I don't believe the State established jurisdiction, uh, that this occurred in Belmont Count (sic) and I would move for dismissal." (Tr. 58). The trial court denied appellant's motion to dismiss.
The standard for proving venue is beyond a reasonable doubt; however, venue need not be established by direct testimony as long as it is proven by all of the facts and circumstances of the case. State v. Headley (1983), 6 Ohio St.3d 475, 477; State v.Gribble (1970), 24 Ohio St.2d 85, 89-90. We have previously held that the trial court has broad discretion to determine the facts which would establish venue. State v. Harris (June 19, 1995), Mahoning App. No. 94 C.A. 63, unreported. On a prior occasion, this court has allowed references to intersecting streets and a reference to a particular city to aid in the establishment of venue. See, Harris, supra.
In the case at bar, several instances on record show how the witnesses arrived at East Richland Market. For instance, Foster stated that they exited the interstate, went down "311", and turned onto "40." (Tr. 36). Appellant's testimony confirmed that Emory's car approached the market from these same streets. (Tr. 72). Additionally, all of the witnesses testified that the incident took place at the East Richland Market, and the complaint stated that the incident took place in Richland Township, Belmont County. Foster also testified that the East Richland Market was located in Richland. (Tr. 17).
Furthermore, this court has previously held that venue can be inferred by evidence such as which police department arrived at the scene of the crime. State v. Cochran (Aug. 20, 1990), Columbiana App. No. 88-C-13, unreported. In this case, Deputy James Zuzack of the Belmont County Sheriff's Department testified that he arrived at the East Richland Market after a call was placed seeking police assistance. (Tr. 40). This testimony presents circumstantial evidence that the offense occurred in Belmont County. Moreover, Deputy Zuzack stated that when appellant, Eva, and Shore attempted to file charges against Emory at the St. Clairsville Police Department they were referred to the county jail, the county sheriff's office, because of jurisdiction. (Tr. 42).
Accordingly, when intersections were established, the Belmont County Sheriff's Department arrived on the scene, and when there was reference to Richland both by a witness and in the complaint, it was not an abuse of discretion on the part of the trial court to conclude that the crime occurred in the City of Richland, Belmont County, State of Ohio. After reviewing all of the facts and circumstances of this case, we determine that venue was sufficiently established in Belmont County.
Appellant's second assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Vukovich, J., concurs. See concurring opinion.
Waite, J., concurs.
APPROVED:
 ______________________________ EDWARD A. COX, PRESIDING JUDGE